**Milton KOOK, Plaintiff,**

v.

**James Harold CRANG, Eric Duffy Scott, Lawrence Lisle Masson, Donald Irving Webb, Dennis Algernon Fitzgerald and Gordon Consaul Dowley, individually and as co-partners doing business under firm name and style of J. H. Crang & Co., Defendants.**

United States District Court
S. D. New York.
April 5, 1960.

Rosenman, Goldmark, Colin & Kaye, New York City, for plaintiff (Milton Adler, New York City, of counsel).

Brinsmade & Schafrann, New York City, for defendants (Hobart L. Brinsmade, New York City, of counsel).

RYAN, Chief Judge.

This suit seeks recovery of a money judgment for an alleged violation of Section 7(c) of the Securities Exchange Act of 1934, as amended (15 U.S.C.A. § 78g(c)), and Regulation T of the Board of Governors of the Federal Reserve System which was promulgated thereunder. Jurisdiction is predicated on Section 27 of the 1934 Act as amended (15 U.S.C.A. § 78aa). Trial was held on March 7, 1960, at which time depositions, exhibits and stipulated facts were received in evidence by consent and constitute the entire trial record.

Defendants are co-partners doing business under the firm name of J. H. Crang & Company; the firm is a member of the Toronto Stock Exchange. All the defendants are citizens and residents of Canada. The firm is not a member of any national securities exchange of the United States but has been registered as a dealer and broker under Section 15 of the Securities Exchange Act of 1934 as amended (15 U.S.C.A. § 78o), since June 1956, at which time, a branch office was opened in New York City. This office was established to deal directly with "institutions" and with members of the New York Stock Exchange and neither bought nor sold securities for individual customers.

In December 1956, plaintiff, a New Jersey resident, was referred to Paul Robert, one of defendants' employees, by a personal friend and plaintiff contacted Robert by telephone in Canada. Mail passed between them. In January 1957, plaintiff visited defendant's New York office (how he became aware of its existence and location is uncertain) and was informed that "If I did business with J. H. Crang, I would have to do it in Toronto."

Plaintiff made two or three trips to Canada and a series of telephone calls before any business was transacted. Through independent study of financial publications and with no advice or recommendation from defendant, plaintiff on April 1, 1957 called Canada, suggested the purchase of Arcadia Nickel Corporation stock and requested Mr. Robert's opinion. The stock was investigated and later the same day Robert called plaintiff, recommended the stock highly and an order for 10,000 shares was placed. On April 3, 1957 plaintiff traveled to Toronto, gave defendant his checks for $12,037.59, in accordance with the margin requirements of the Toronto Exchange for this purchase and received a confirmation slip on the sale. The stock was held in Toronto as collateral for the credit extended and was issued in the name of Robert in trust for plaintiff. This trust arrangement was part of a plan of the plaintiff to form a Canadian corporation in hope of effecting a possible tax saving for plaintiff on expected and anticipated profits.

The operations of Arcadia Nickel were less than successful, and in July 1957 the margin calls by Crang began. There were trips by plaintiff to Canada, telephone calls and 3 margin calls on Arcadia, in answer to which plaintiff mailed personal checks to Crang in Canada amounting to $4,000.

Yet, in the face of this adversity, plaintiff on September 3, 1957 purchased 2,000 shares of Eastern Mining and Smelting on the telephone and mailed his check to Crang in Canada for $2,300 on account of the purchase price of $4,-100. Credit was extended for the balance, the purchased stock was retained as collateral and confirmation was mailed to plaintiff. This stock also turned out to be less than "blue chip" and plaintiff soon received further margin calls. During October 1957, plaintiff mailed to Crang in Canada two checks totalling $3,400, but these were to be his last. As the stock continued to fall, defendant sold shares it held on account until the balance held in plaintiff's name was down below $400. The total paid out by plaintiff to Crang was $22,137.59 and it is this sum he seeks to collect.

During this entire time, plaintiff was in contact with the New York office. According to his testimony, once a week he would telephone or visit either Mr. Daly or the board room to discuss the "market in general" or get quotations on his and other stocks. Only once did the New York office contact plaintiff and that was in November, 1957 when Daly relayed a message from Robert received on the direct wire from Toronto. The New York office made no suggestions which led to purchases and offered their facilities, as regards quotations, merely to a known customer of the Toronto office. Robert was at all times plaintiff's broker and Daly's role was that of an informal adviser (principally of market quotations) who had become personally acquainted with plaintiff.

Both mining companies are Canadian corporations, whose stock is traded only on the Canadian exchange.

■ Plaintiff contends that defendant's registration as a broker-dealer places it within the purview of Section 7(c) of the Securities Exchange Act. If these transactions fall within Section 7(c), there has been a violation of that statute. Defendant argues, however, that Section 30(b) of the Act as amended (15 U.S.C.A. 78dd), specifically exempts these transactions from the coverage of the Act because they are transactions without the jurisdiction of the United States and asks that the suit be dismissed for lack of jurisdiction over the subject matter of the complaint.

Section 7(c) provides:

"It shall be unlawful for * * * any broker or dealer who transacts a business in securities through the medium of any such member, directly or indirectly to extend or maintain credit or arrange for the extension or maintenance of credit to or for any customer. * * * "

Section 30(b) states:

"The provisions of this chapter or of any rule or regulation thereunder shall not apply to any person insofar as he transacts a business in securities *without the jurisdiction of the United States,* unless he transacts such business in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate to prevent the evasion of this chapter." (Emphasis added.)

Plaintiff's argument proceeds as follows: defendant is a registered broker-dealer who transacts a business in securities through a member (admittedly doing business with institutions and members of the New York Stock Exchange); defendant extended credit to plaintiff (admittedly in Toronto); therefore these transactions are within Section 7(c), and Section 30(b) does not exempt defendant since the use of the mails and telephone even though emanating on its part in Canada brings these transactions within the jurisdiction of the United States.

■ We feel that such an interpretation does violence to the plain meaning of the statute as enacted by Congress. To come within 7(c), there must be some connection between the specific transaction and the "business transacted with a member." In this transaction there must be present a connection between the extension of credit and the agent (here the New York office) who "transacts the business with a member." We find there is none.

■ It is a canon of construction that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States. Congress is primarily concerned with domestic conditions. *Foley Brothers v. Filardo,* 1949, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680; *Blackmer v. United States,* 1937, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375. This construction is reenforced by the Act itself which, in Section 30(b), specifically restricts the Act to the transaction of business within the United States.

All the essentials of these transactions occurred without the United States. Stock of a Canadian corporation was purchased on the Toronto Exchange by a Canadian brokerage house. The orders were placed and payment received in Canada. Credit was extended and the stocks were held as collateral in Canada. Confirmation and all margin calls emanated from Canada. Whatever choice of law theory might be applied, these were Canadian transactions, and the use of the mails and telephone within the United States does not change the locale. The question here is not whether there are contacts with the United States sufficient to give this Court jurisdiction, no one questions that, but rather whether Congress intended to make the statute applicable to these transactions. We hold that such was not the intention of the legislature and that "jurisdiction" as used in Section 30(b) contemplates some necessary and substantial act within the

United States. The latter section, we feel, was written with the present situation in mind. Congress gave the Commission power in Section 30(b) to extend the jurisdiction of the Act to include essentially foreign transactions where the use of an instrumentality of interstate commerce (or indeed the mere registration under the Act) would afford a basis for jurisdiction. The Commission has never acted.

Certainly, the mere presence of defendant as a broker or dealer under Section 15 would not, without more, make its foreign transactions subject to the Act. In this suit, plaintiff must show some act done within the United States either in furtherance of the direct or indirect extension of credit or in furtherance of the direct or indirect maintenance of credit. We find none. All contacts with and acts done by the New York Office of defendant had no remote connection with the credit arrangement.

We conclude that the transactions pleaded were without the jurisdiction of the United States and were specifically exempted from the coverage of the Securities Exchange Act of 1934 by Section 30 of that Act, and this suit must be dismissed.

So ordered.