Charles F. FINCH, Plaintiff,

v.

MARATHON SECURITIES CORPORA-TION, Electronics International Capital Ltd. and Ronald L. Howard, Defendants.

No. 67 Civ. 4713.

United States District Court,
S. D. New York.

Sept. 17, 1970.

Baker & McKenzie, New York City, for plaintiff; Lawrence W. Newman, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants; Barry H. Garfinkel, New York City, of counsel.

TENNEY, District Judge.

Defendants' motion to dismiss, pursuant to Fed.R.Civ.P. 12, presents a close and novel question concerning this Court's jurisdiction over the subject matter of the instant suit.

Plaintiff, a citizen and resident of Great Britain, commenced an action against the three defendants named herein charging them with violations of Section 10(b) of the Securities Exchange Act of 1934 (hereinafter referred to as the "Act"), 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 CFR § 240.10b–5 (1967), and with perpetrating and conspiring to perpetrate a fraudulent sale of securities in violation of the common law of New York.

Defendant Ronald Howard, like plaintiff, is a citizen and resident of England. Defendant Electronics International Capital Ltd. (hereinafter referred to as "EICL") is a defunct Bermudian closed-end investment company, previously registered as such with the United States Securities and Exchange Commission, whose assets were succeeded to and liabilities assumed by defendant Marathon Securities Corporation (hereinafter referred to as "Marathon"), another closed-end investment company, organized under the laws of Delaware in 1965 and also registered with the Securities and Exchange Commission. It is undisputed that Marathon maintains a place of business in New York City, and that although

it was organized in May of 1965 it did not succeed to EICL's assets and liabilities until July of 1965.[1]

It appears that the alleged fraud and violations of the Act resulted from the same operative events and transactions. On April 28, 1965, plaintiff met in London, England, with an officer of and accountant to Vectron Electro-Physics Limited (hereinafter referred to as "Vectron"), a corporation organized and operated under the laws of Great Britain, in order to negotiate the purchase of EICL's interest in Vectron. It should be noted that Vectron securities have never been registered in this country—nor have they ever been listed on any of our national securities exchanges or traded on our over-the-counter market. During the course of the April 28 meeting, Mr. Finch was shown a projected cash flow analysis for Vectron, which was purportedly based upon information furnished by defendant Ronald Howard. Plaintiff was assured by Vectron's representatives that the orders reflected on the document were firm and definite. At this London meeting plaintiff was also shown a draft letter addressed to another prospective purchaser of Vectron and a copy of a "consolidated approximate balance sheet" for Vectron, the preparation of which was also allegedly based upon information received from Mr. Howard. Finally, it appears that Mr. Finch was assured by the Vectron officer and accountant present at the meeting that the company's products were sound and capable of generating substantial sales and profits.

Apparently convinced of the soundness of this investment, based upon the above-noted statements, representations and documents shown to him, plaintiff came to New York with Vectron's accountant and, on May 1, 1965, signed an agreement to purchase Vectron. Twenty days later, a substantially identical agreement was signed in London. There is earnest dispute between plaintiff and defendants as to whether the agreement became binding and effective as signed in New York on May 1, or whether finality attached at the re-execution in London on May 21.

■ Predicated upon the foregoing factual analysis, defendants urge dismissal of the complaint for lack of jurisdiction over the subject matter, because the complaint in effect alleges that a foreigner (plaintiff) was defrauded in a foreign country (England) by foreigners (Howard as agent of EICL) into purchasing foreign securities (Vectron) which are neither traded nor registered in this country.

No doubt, if all relevant factual inquiry were concluded at this point, dismissal for lack of subject matter jurisdiction would be compelled. There exist, however, other salient facts which, upon analysis, *partially* bridge the jurisdictional gap between plaintiff and defendants.

Firstly, it appears that while EICL was organized under the laws of Bermuda, this was done predominantly to secure certain tax advantages. EICL, although based in Bermuda, certainly had more than an "off-shore" connection with this country, considering that all of its officers and six of its eight directors were American. Moreover, it is undisputed that the Arcady Corporation, organized under the laws of Illinois, maintained substantial control over both EICL and its successor Marathon, and that the Vectron securities sold by EICL were originally kept in New York. It also appears that Marathon's transfer agent, custodian and auditors are New York-based banks and accountants.

■■ Finally, it should be noted that the parties to the agreement, in apparent anticipation of the precise question before this Court, provided that the agreement was being made in accordance with the requirements of the Investment Company Act of 1940, the Securities Act of

---

1. The mere fact that Marathon is a United States corporation with an office in New York does not confer subject matter jurisdiction on this Court since Marathon was not even in existence at the time the alleged fraud was perpetrated.

1933 and the Securities Exchange Act of 1934 *"to the extent that the subject matter of the agreement is within the purview of such Acts."* [2] (Emphasis supplied.) Such agreement, of course, cannot confer subject matter jurisdiction upon the district court. Nor does the fact that plaintiff was to pay EICL at what was designated "its principal office within the United States" [3] make EICL either a resident corporation or a foreign corporation maintaining a place of business herein.

Before considering the authority which this Court deems dispositive of the jurisdictional issue presented herein, certain other preliminary observations should be made. Conspicuously absent from plaintiff's papers in opposition to this motion is any claim that some fraudulent statement or representation was made to him in this country. Plaintiff seems to tacitly admit that all of the alleged fraudulent statements about the Vectron securities were made to him at the April meeting in London. This admission, of course, undercuts the significance of the May 1 meeting in New York, especially in view of the fact that it is also undisputed that the final closing of the contract occurred on May 21 in London, at which time some changes in the terms of the agreement were made and the necessary British tax stamp was affixed to the contract.

Plaintiff also does not dispute the fact that despite the agreement's provision for a New York closing, the closing was in fact conducted, as indicated above, in London on May 21, 1965, where the stock transfer forms for the securities were executed and where the Vectron shares and certificates were physically delivered to him.

Finally, while it is unclear from the various copies of the agreements submitted to the Court whether the parties agreed upon a New York or British "choice of law," plaintiff has not refuted defendants' contention that it was agreed that English law would govern.

Although the Court is both mindful of the seriousness of the alleged fraud and the evidence of American ownership of the foreign companies involved, and aware that the original execution of the contract took place in New York on May 1, 1965, it still finds, for reasons to be noted *infra*, that it is without subject matter jurisdiction of this dispute.

 Plaintiff apparently contends that since the contract for the sale of the Vectron securities was originally executed in New York, the Court has jurisdiction of this action under Section 27 of the Act, 15 U.S.C. § 78aa, which provides, *inter alia*, that actions to enforce liabilities created by the Act "may be brought in the district wherein any act or transaction constituting the violation occurred." Plaintiff's own admissions belie this contention since he does not dispute the fact that the alleged fraudulent misrepresentations and documents, constituting the basis of this action, were made and furnished to him in London, England. In view of this admission and the fact that the contract was re-executed with changes in London, it is difficult to perceive just what act or transaction *constituting the violation* occurred in this district.

Since Section 27 of the Act admittedly provides other more liberal bases for jurisdiction, it would be wise to first consider whether, because of this Court's designation of the transactions underlying this suit as "foreign", the presumption against extraterritorial application of domestic legislation is applicable herein. That is, even assuming that one of the bases for jurisdiction enumerated in Section 27 exists, and that there has been sufficient use of the United States mail by defendants in order to satisfy the interstate commerce requirement of Section 10 of the Act, 15 U.S.C. § 78j, the Court's initial inquiry should still be

---

2. Defs. Exh. A at 6, annexed to Reply Affid. of Barry H. Garfinkel (dated April 27, 1970).

3. *Id.* at 2.

directed at whether "Congress intended to make the statute [Section 10 of the Act, 15 U.S.C. § 78j] applicable to these transactions." Kook v. Crang, 182 F. Supp. 388, 390 (S.D.N.Y.1960).

In determining whether Section 10(b) is applicable to a suit brought by a foreign plaintiff against foreign defendants to recover damages for being fraudulently induced in a foreign country to purchase foreign securities neither registered nor traded in this country, I find the recent Court of Appeals opinion in Schoenbaum v. Firstbrook, 405 F.2d 200 (2d Cir.), rev'd on other grounds, 405 F.2d 215 (2d Cir. 1968) (en banc), cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969), dispositive.

In Schoenbaum v. Firstbrook, *supra*, 405 F.2d at 206, it was decided that "Congress intended the Exchange Act to have extraterritorial application in order to protect *domestic investors* who have purchased foreign securities on *American exchanges* and to *protect the domestic securities market* from the effects of improper foreign transactions in American securities." (Emphasis supplied.) The presumption against extraterritorial application of domestic legislation was deemed subordinate to the need to protect American investors. *Schoenbaum, supra* at 206.

■ While the Court rejected the argument that Section 30(b) of the Act, 15 U.S.C. § 78dd(b),[4] precluded extraterritorial application of the Act to persons who engage in isolated foreign transactions in securities (which is essentially what is involved herein), it did hold "that the district court has subject matter jurisdiction over violations of the Securities Exchange Act although the transactions which are alleged to violate the act take place outside the United States, at least when the transactions involve stock registered and listed on a national securities exchange, and

are detrimental to the interests of American investors." Schoenbaum v. Firstbrook, *supra*, 405 F.2d at 208. Thus, when, as here: (1) the substance of the allegedly fraudulent conduct occurred outside the United States; (2) the parties are predominantly foreign; (3) the subject shares are securities in a foreign corporation neither registered nor traded on a national securities exchange; and (4) there is no showing of any domestic injury, it would appear that the district court is without subject matter jurisdiction, despite the existence of other less meaningful American-based facts and events.

It should be emphasized that the Court is not inferentially attempting to carve an exception to the well settled rule that the Securities Exchange Act of 1934 applies to the sale of securities of closely held "family" corporations as well as to securities which are publicly traded. Schine v. Schine, 250 F.Supp. 822, 823 (S.D.N.Y.1966). That is, it is not suggested that the Act's extraterritorial protection be extended only to frauds involving transactions in securities of publicly held corporations which are traded on a securities market. Rather, it is now held that a district court is without subject matter jurisdiction over a cause of action alleging no domestic injury or consequence, brought by a British resident against other foreigners, for injuries sustained as a result of being fraudulently induced in a foreign country to purchase securities of an alien corporation. See United States v. Aluminum Co. of Am., 148 F.2d 416, 443 (2d Cir. 1945).

■ With regard to plaintiff's second and third causes which, of course, present non-federal claims, they also must be dismissed since complete diversity is obviously lacking; the plaintiff and two defendants are aliens. John Birch Soc'y v. National Broadcasting Co., 377 F.2d 194, 197 (2d Cir. 1967).

4. "The provisions of this chapter or of any rule or regulation thereunder shall not apply to any person insofar as he transacts a business in securities without the jurisdiction of the United States, unless he transacts such business in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate to prevent the evasion of this chapter." 15 U.S.C. § 78dd(b).

Moreover, since the alleged federal claim is being dismissed prior to trial, the alleged pendent claim is also properly dismissible. T. B. Harms Co. v. Eliscu, 339 F.2d 823, 829 (2d Cir. 1964), cert. denied, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965).

Accordingly, and for the foregoing reasons, defendants' motion to dismiss is granted.

So ordered.