Beatrice Mamet WAGMAN, Plaintiff,

v.

Henry T. ASTLE et al., Defendants.

No. 70 Civ. 3300.

United States District Court,
S. D. New York.

Aug. 30, 1974.

**498**

Samuel Kaufman, New York City, for plaintiff; Bertram Bronzaft, New York City, of counsel.

Dunnington, Bartholow & Miller, New York City, for defendants Henry T. As-tle, D. M. Wolcott and William E. Richards; William M. Bradner, Jr., James N. Deinlein, New York City, of counsel.

Lord, Day & Lord, New York City, for defendant Dome Petroleum, Ltd.; Michael J. Murphy, New York City, of counsel.

Securities and Exchange Commission, Washington, D. C., amicus curiae; Paul Gonson, Michael A. Macchiaroli, Washington, D. C., of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This case, before the Court on cross-motions for summary judgment with stipulated facts, presents hitherto undecided questions concerning the extraterritorial application of the Securities Exchange Act of 1934, 15 U.S.C. § 78a ("the Exchange Act"), and in particular, of § 16(b) of that Act, 15 U.S.C. § 78p(b). The facts can be very briefly stated.

Plaintiff, a holder of ten shares of Dome Petroleum, Ltd. ("Dome"), sues derivatively on behalf of the corporation to recover profits made by the three individual defendants, officers of the corporation, upon purchases and sales of the common stock of Dome within a six month period as prohibited by § 16(b).[1] Dome is a Canadian corporation listed and traded on the American Stock Exchange ("Amex") continuously since

---

1. 15 U.S.C. § 78p(b):

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

1951, and registered with the Securities and Exchange Commission ("the Commission") in accordance with § 12 of the Exchange Act, 15 U.S.C. § 78l. The individual defendants are all citizens and residents of Canada; none is present in or does business in this district, nor even, so far as the papers reflect, anywhere in the United States. Each of the transactions in question took place in Canada, either on Canadian exchanges or in private sales. The individual defendants complied with the reporting requirements of § 16(a) of the Exchange Act, 15 U.S.C. § 78p(a)[2] by filing Form 4 reports with the Commission, but had no other contact with the United States in connection with these transactions. Personal service was made upon the individual defendants in Canada, by order of Judge Cooper of this Court.

The parties, and the Commission as *amicus curiae*, argued three questions before the Court: whether the Court has subject matter jurisdiction over the controversy; whether it has personal jurisdiction over the individual defendants; and whether venue is properly laid in this Court. All three were thoroughly briefed and argued, and are of great interest; however, the Court's determination of the question of personal jurisdiction disposes of the case, and precludes discussion of the other questions.

It is axiomatic that a court must have personal jurisdiction over at least one defendant before it has jurisdiction to adjudicate the substantive controversy.[3] 1 Moore's Federal Practice ¶ 0.60[10], n. 7 (1972); Japan Gas Lighter Ass'n v. Ronson Corp., 257 F. Supp. 219, 224 (D.N.J.1966). Absent waiver or consent, personal jurisdiction is conferred upon the Court by valid service of process. 1 Moore's Federal Practice ¶ 0.60[10], n. 7. In the instant case there is no such waiver or consent.

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, authorizes this Court to assert personal jurisdiction to enforce any liability under the Act by service of process "wherever the defendant may be found." Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326 (2d Cir. 1972) held that by this clause Congress authorized extraterritorial service to the fullest extent compatible with due process. 468 F.2d at 1340. Defendants claim that for the Court to assert jurisdiction over them in this case would violate due process, and that therefore the personal service upon them in Canada was invalid. This Court agrees.

The general boundaries of due process in connection with jurisdiction are outlined most extensively by the Supreme Court in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life

---

2. 15 U.S.C. § 78p(a):

Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered pursuant to section 78l of this title, or who is a director or an officer of the issuer of such security, shall file, at the time of the registration of such security on a national securities exchange or by the effective date of a registration statement filed pursuant to section 78l(g) of this title, or within ten days after he becomes such beneficial owner, director, or officer, a statement with the Commission (and, if such security is registered on a national securities exchange, also with the exchange) of the amount of all equity securities of such issuer of which he is the beneficial owner, and within ten days after the close of each calendar month thereafter, if there has been a change in such ownership during such month, shall file with the Commission (and if such security is registered on a national securities exchange, shall also file with the exchange), a statement indicating his ownership at the close of the calendar month and such changes in his ownership as have occurred during such calendar month.

3. Although Dome is a named defendant, since plaintiff sues derivatively in its behalf, and since any recovery would be against the individuals and would inure to the corporation, *in personam* jurisdiction over Dome does not suffice.

Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L. Ed.2d 223 (1957); and International Shoe v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945). The fundamental principle which emerges from these cases is a requirement of some minimal connection between the defendant and the state enforcing liability, in addition to notice and an opportunity to be heard, such that the exercise of jurisdiction does not offend traditional notions of justice and fair play.

In *Leasco, supra,* Judge Friendly discussed this principle specifically in the context of the extraterritorial application of the Exchange Act. Although he was there confronted with an alleged violation of § 10(b) of that Act, 15 U.S.C. § 78j(b), the reasoning is equally applicable here.[4]

Judge Friendly cited Hanson v. Denckla, *supra,* stating: "`. . . [I]t is 'essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'`" 468 F.2d at 1340. He went on to explore just what such acts might be, noting that personal jurisdiction could be based upon either acts within the state, doing business within the state, or acts outside the state having effects within the state. Since in this case the defendants did not come within or do business in the United States, the basis for personal jurisdiction must be the effects within the United States of their acts in Canada. A general statement of this basis of

jurisdiction appears in the Restatement (Second) of Conflict of Laws, § 37.

> A state has the power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state makes the exercise of such jurisdiction unreasonable.

But, after quoting this statement, Judge Friendly went on to observe:

> But this is a principle that must be applied with caution, particularly in an international context. See Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231, 239 (9 Cir. 1969) (dissenting opinion); Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1127 (1966). At minimum the conduct must meet the test laid down in § 18 of the Restatement (Second) of Foreign Relations Law, including the important requirement that the effect "occurs as a direct and foreseeable result of the conduct outside the territory." We believe, moreover, that attaining the rather low floor of foreseeability necessary to support a finding of tort liability is not enough to support *in personam* jurisdiction. The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him.

468 F.2d at 1341.[5]

---

4. In fact, all the cases discussing the extraterritorial application of the Exchange Act have involved alleged violations of § 10(b). *See* Schoenbaum v. Firstbrook, 405 F.2d 200 (2d Cir. 1968), cert. den. sub nom., Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); Travis v. Anthes Imperial Limited, 473 F.2d 515 (8th Cir 1973); Securities and Exchange Commission v. United Financial Group, Inc., 474 F.2d 354 (9th Cir. 1973); Kook v. Crang, 182 F.Supp. 388 (S.D.N.Y.1960); Finch v. Marathon Securities Corporation, 316 F.Supp. 1345 (S.D.N.Y.1970); Getter v. R. G. Dick-

inson & Co., 366 F.Supp. 559 (S.D.Iowa 1973).

5. The tests of § 18 of the Restatement (Second) of Foreign Relations Law, to which Judge Friendly referred, are these:
   A state has jurisdiction to prescribe a rule of law attaching legal consequences to conduct that occurs outside its territory and causes an effect within its territory, if either
   (a) the conduct and its effect are generally recognized as constituent elements of a crime or tort under the law of states

At this point the unique characteristics of § 16(b) become significant. That section imposes upon officers, directors, and owners of more than ten percent of the shares, of corporations registered with the Commission in accordance with § 12 of the Exchange Act, 15 U.S.C. § 78*l*, automatic liability for profits made upon purchases and sales of securities of those corporations, within a period of six months. The penalty is forfeiture of those profits to the corporation. The section is designed to protect "outside" stockholders against short-swing speculation by "insiders" with advance information, II Loss, Securities Regulation 1041 (1961); its purpose as set forth in the section itself is to prevent "the unfair use of information which may have been obtained by such beneficial owner, officer or director by reason of his relationship with the issuer." Congress' goal was to restore eroded investor confidence in the integrity of the market, and the technique it chose was a sweeping removal of any profit motive for such "sure-thing" speculation. This is different from the anti-manipulation provisions of §§ 9, 10(b), and 15(c)(1) of the Exchange Act, 15 U.S.C. §§ 78i, 78j(b) and 78o(c)(1); the rationale is primarily that it is unfair for some to profit in ways that others cannot, rather than that such speculation will adversely affect the price to the detriment of the "outside" shareholders. In fact, some commentators judge the effect on prices of such trading to be minimal. *See, e. g.*, Hetherington, Insider Trading and the Logic of the Law, 1967 Wisc.L.Rev. 720.

Congress conducted extensive hearings into insiders' abuse of inside information, prior to deciding that "the only remedy . . . effective for this reform was the imposition of a liability based upon an objective measure of proof." Smolowe v. Delendo Corp., 136 F.2d 231, 235 (2d Cir. 1943), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). It essentially determined that certain widespread practices caused such a generally undesirable effect upon the confidence of investors that the only effective remedy was a rule which would create a consistent appearance of fairness, of the impossibility of abusing inside information, even though that rule might apply in many situations where there was no undesirable effect. Accordingly, no showing of actual adverse effect is necessary to incur liability. This contrasts with § 10(b), which requires the private plaintiff to show damage. *See, e. g.*, 2 A. Bromberg, Securities Law: Fraud, Sec. 8.7 (1973).

But no other country has a rule such as § 16(b), and in fact, Ontario has explicitly rejected such a rule. Munter, Securities Exchange Act of 1934, 52 Cornell L.Q. 69, 70 (1966). Even in this country the rule has aroused widespread debate. *See, e. g.*, Munter, *supra;* Manne, Insider Trading and the Stock Market (1966); Schotland, Unsafe at Any Price: A Reply to Manne, 53 Va.L. Rev. 1425 (1967).

Moreover, other than the corporation's registration with the Commission, no act within this country is statutorily required as part of or as a precondition to the offense. This also contrasts with § 10(b), which requires as an element of the offense some use of the mails or the facilities of interstate commerce. In addition, since § 16(b) is a rule of automatic liability, it requires no showing of intent to use inside information, while § 10(b) makes some degree of scienter an element of the offense. *See, e. g.*, 2 A. Bromberg, Securities Law: Fraud, Sec. 8.4 (1973).

that have reasonably developed legal systems, or
(b) (i) the conduct and its effect are constituent elements of activity to which the rule applies; (ii) the effect within the territory is substantial; (iii) it occurs as a direct and foreseeable result of the conduct outside the territory; and (iv) the rule is not inconsistent with the principles of justice generally recognized by states that have reasonably developed legal systems.

The Court is now presented with an alleged violation of a United States statute, in connection with which defendants committed no acts in this country and caused no actual effect here.[6] As noted above, to date all the cases addressing the question of the extraterritorial applicability of the Exchange Act have concerned alleged violations of § 10(b), and consequently the principles of personal jurisdiction have been applied in situations in which the individual defendants have knowingly performed some act or caused some actual effect within this country. Even then, upon at least one occasion, the connection has been found too tenuous to support jurisdiction. *See Leasco, supra.*

■ The same basic principles of personal jurisdiction apply in the case of § 16(b). Even if Congress intended § 16(b) to have extraterritorial effect, a question which this Court does not reach, due process still requires a minimal connection between the individual defendants and this country. *Leasco, supra.*

Plaintiff's most persuasive argument is that Congress may, within the limits of due process, impose conditions upon the access of foreign corporations to the American capital market, and that one of those conditions may be that their insiders be subject to the requirements of § 16(b). Those insiders, by filing their Form 4 reports in compliance with § 16(a), as defendants here did, indicate their awareness that Congress has determined insider trading to have substantial, direct and adverse effects upon the American capital market and American investors. Therefore, even an automatic, prophylactic rule, rejected by the foreigner's own country as applied to its domestic transactions, may, within the requirements of § 18 of the Restatement (Second) of Foreign Relations Law, apply to that foreigner in connection with his dealing abroad in stock of his corpo-

ration, listed on an American exchange. Plaintiff cites Schoenbaum v. Firstbrook, *supra,* in support of this argument.

That case involved the sale of treasury shares of a Canadian corporation which was listed and traded on the American Stock Exchange, to two other corporations, only one of which was American. The plaintiff, a shareholder of the Canadian corporation, alleged that its directors conspired with the purchasers to arrange the sale of shares, at a price which they knew to be below their true value. The transactions took place outside of the United States. The Court found the listing of the stock on an American exchange and the detrimental effect of the fraudulent acts upon American investors in themselves sufficient to create subject matter jurisdiction. The question of personal jurisdiction was never raised.

■ But this Court is not persuaded. First, Judge Friendly indicates in *Leasco, supra,* that more contact may be required to assert personal jurisdiction than subject matter jurisdiction. 468 F.2d 1340 et seq. But even were the finding of subject matter jurisdiction to support personal jurisdiction as well, in *Schoenbaum* the court was able to point to substantial, actual effects, resulting from acts considered illegal even abroad. In this Court's judgment, there is in the instant factual situation simply not enough connection between the individual defendants and this country, by which the defendants availed themselves of the privilege of conducting activities here, or caused an effect here, to permit application of § 16(b) to them. Upon these facts, this Court concludes that to assert personal jurisdiction over the individual defendants would "offend traditional notions of justice and fair play." *International Shoe, supra.*

Accordingly, plaintiff's motion for summary judgment is denied; defend-

---

**6.** A case can be imagined in which individual foreign defendants come into, do business in, or knowingly cause an actual effect in this country, in connection with a transaction which violates the provisions of § 16(b). But that is not this case.

ants' cross-motion for summary judgment is granted; and the complaint is dismissed for lack of *in personam* jurisdiction.

It is so ordered.