**Benson A. SELZER and Patrick Henry Warren, Plaintiffs,**

v.

**The BANK OF BERMUDA LTD., Defendant.**

**No. 74 Civ. 1476 (MP).**

United States District Court, S. D. New York.

Nov. 21, 1974.

Finley, Kumble, Heine, Underberg & Grutman, New York City, for plaintiffs; Jewel H. Bjork, Norman Roy Grutman, and Alan M. Gelb, New York City, of counsel.

Jacobs Persinger & Parker, New York City, for defendant; Irving Parker and Thomas W. Jackson, New York City, of counsel.

## OPINION

POLLACK, District Judge.

Defendant has moved for dismissal of the amended complaint in this action, and certain specific allegations thereof, on several grounds. The original complaint was dismissed for lack of diversity jurisdiction, since at that time one of the co-plaintiffs was an alien in this suit against an alien bank. The amended complaint was thus an attempt to plead federal claims in relation to the transactions in question. Prior to the hearing on defendant's motion to dismiss the amended complaint, plaintiffs moved for leave to drop the alien co-plaintiff from the suit. That motion is granted, and diversity jurisdiction now exists.[1] For purposes of clarity in this opinion, therefore, the alien co-plaintiff's interest will not be discussed. Plaintiff has

---

1. In 1972 plaintiff Selzer and his family assigned "as of July 1969" their interest in the trust which is the basis for this suit to one Warren, a British citizen. Warren was a co-plaintiff at the time of the commencement of this action. In September 1974, Warren reassigned his right, title, and interest in the trust to Selzer and his family.

Defendant has attempted to characterize this reassignment by plaintiff Warren as an assignment for the purpose of creating diversity. Defendant notes 28 U.S.C. § 1359, which states

"A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

Here the validity of the original assignment to Warren from Selzer was contested by the parties, Selzer had independent claims as to the trust by virtue of his guarantee of the trust's debts, and it is clear that Warren was in no way a moving force in this suit. The dropping of Warren as a co-plaintiff

moved to amend his amended complaint ("the complaint," hereafter) to assert non-federal claims now proper under diversity jurisdiction.

The complaint has attempted to state federal claims under the Securities Exchange Act of 1934, (the "Act") Sections 7, 10(b), 27 and 29 (15 U.S.C. §§ 78g, 78j(b), 78aa and 78cc), together with Federal Reserve Board Regulations B and T (12 C.F.R. §§ 207 et seq. and 220 et seq.) and S.E.C. Rule 10b–5 (17 C.F. R. § 240.10b–5); and claims under The Investment Advisers Act of 1940, Sections 206, 214 and 215 (15 U.S.C. §§ 80b–6, 80b–14, and 80b–15).

Defendant contends that: (1) None of the claims is a valid federal claim thus foreclosing jurisdiction in this Court, citing Rule 12(b)(1) and (6), Fed.R.Civ.P.; (2) the fraud allegations in the complaint are not stated with the particularity required by Rule 9(b), Fed.R.Civ.P; (3) the claims based upon §§ 7 and 29 of the Act are barred by New York's three year statute of limitations; and (4) the amended complaint is not in the plain, concise language required by Rule 8, Fed.R.Civ.P.

In support of that segment of its motion that suggests that this Court lacks subject matter jurisdiction over plaintiff's claims, defendant has strongly urged that the Act does not apply to the transactions here involved, which it asserts are essentially overseas claims.

As detailed *infra*, the Court finds that the Act does in fact apply and that plaintiff has stated claims entitling relief under certain of the cited sections of the Act.

## I.

Plaintiff Selzer engaged in a series of financial transactions with the defendant Bank of Bermuda, from which the present suit arises.[2] Selzer, a New York citizen, arranged with Bank, a Bermuda corporation, to have one Courtois, a Canadian citizen, create a personal trust, of which Bank was named the trustee and Selzer was named the beneficiary, with Selzer's family as contingent beneficiaries. This trust was settled in 1967 with $1,000 capital supplemented with loan capital thereafter. Its purpose was to trade in American securities, which it did, losing large amounts of money. The securities purchased for the trust were financed by collateralized loans made by the Bank at up to 100% margin. In 1970, Selzer personally guaranteed the trust's debts to the Bank, a guarantee which he allegedly revoked in 1973. Selzer charges various violations of the securities laws in connection with the Bank's trading for the trust and sues for damages as beneficiary and guarantor.

Between May 1967 and January 1968 Selzer made substantial deposits in an account with the Bank. In 1968 Selzer arranged for a loan of $390,000 from the Bank, allegedly for the purchase of American securities pursuant to options he then held. He placed $136,500 on deposit with the Bank at the time of the loan as collateral to guarantee interest payments on the loan. Selzer never drew down the loan from the Bank, allegedly because the price of the stock he contemplated acquiring never rose above the option price. He alleges securities law violations by the Bank in connection with alleged misuse by the Bank of the proceeds of the loan, which he had arranged. The Bank is now holding $203,750 of Selzer's funds as security for the payment of the trust's debts.

## II.

The transactions here involved have the following connection with this country: Selzer is an American citizen. Bank allegedly solicited the trust and loan arrangements in New York. Plain-

---

thus perfects the jurisdiction of the Court, clears up the problem of the validity of the original assignment, and eliminates an apparently uninterested plaintiff. Defendant's contentions, and the cases cited in support thereof, are not relevant in this case.

2. The factual background of this case is stated as alleged by plaintiff, whose allegations must be treated as true in consideration of a motion to dismiss on the pleadings.

tiff alleges that the trust was set up to invest in, and did invest in, American securities, listed and unlisted.

 The Securities Exchange Act is applicable to securities transactions where (1) there is some significant connection in the violations with the United States, and (2) the effects of the violations are detrimental to American investors. The significant connection may be involvement of stock listed on American exchanges, Schoenbaum v. Firstbrook, 405 F.2d 200 (2d Cir. 1968), cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L. Ed.2d 219 (1969); Roth v. Fund of Funds, 405 F.2d 421 (2d Cir. 1968), cert. denied, 394 U.S. 975, 89 S.Ct. 1469, 22 L.Ed.2d 754 (1969), fraudulent misrepresentations in the United States, Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326 (2d Cir. 1972); Travis v. Anthes Imperial Ltd., 473 F.2d 515 (8th Cir. 1973), or other involvement of American investors to their detriment, S.E.C. v. United Financial Group, Inc., 474 F.2d 354 (9th Cir. 1973).

██ The disputed transactions, at least those alleged in connection with the 10b–5 claim, involved trading in securities listed on American exchanges, as in Schoenbaum and Roth. The required significant connection is thus present here.

██ The question of whether sufficiently detrimental effects in this country can be found is more difficult. The trust appears to be a Bermuda citizen; its nominal founder is a Canadian; yet Selzer, who stands to lose under his guarantee of the trust's debts, is an American. He alleges that trusts similar to his were arranged for other Americans. While it would be possible to view this dispute as one between a Bermuda trust and a Bermuda bank, the proper course is to look through the forms to discover the effect upon the Bank's ultimate American customer. Selzer's claims as to the loan account are less troublesome, since as to them the detrimental effect of the alleged misuse is clearly upon the American, Selzer, as debtor. Subject to the exemption of § 30(b), discussed immediately infra, the Securities Exchange Act is applicable to the alleged transactions.

██ Section 30(b) exempts from the provisions and rules of the Act "any person insofar as he transacts a business in securities without the jurisdiction of the United States [with exceptions not here applicable]". In Kook v. Crang, 182 F.Supp. 388 (S.D.N.Y.1960), one of the few cases to apply § 30(b) to exempt a defendant,[3] the Court held that "jurisdiction" as used in § 30(b) "contemplates some necessary and substantial act within the United States". (at 390–91). It appears here that the trading in American securities apparently on American exchanges,[4] alleged in the complaint, constituted such necessary and substantial acts within this country as to render the transactions not "without the jurisdiction of the United States". Consequently, on the allegations in the complaint relating to trading in securities, the Bank would not be exempted by § 30(b) from the thrust of the Securities Acts. Cf. Roth v. Fund of Funds, Ltd., 405 F.2d 421 (2d Cir. 1968), cert. denied, 394 U.S. 975, 89 S.

---

3. Three other cases have found § 30(b) applicable to the defendants involved therein: Metro-Goldwyn-Mayer, Inc. v. Transamerica Corp., 303 F.Supp. 1354 (S.D.N.Y.1969), discussed note 5, infra; Silva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 48 F. R.D. 385 (S.D.N.Y.1969); Ferraioli v. Cantor, CCH Fed.Sec.L.Rep. [¶ 91,615] (S.D. N.Y.1965). The latter case was explicitly overruled on this point in Schoenbaum v. Firstbrook, 405 F.2d 200 at 208 (2d Cir. 1968).

4. Should it appear after trial that the trading in American securities upon which the alleged violations are based was done neither on American exchanges nor through other instrumentalities of American commerce, defendant may again move at that time for dismissal of these claims for lack of subject matter jurisdiction.

Ct. 1469, 22 L.Ed.2d 754 (1969). *Compare* Metro-Goldwyn-Mayer, Inc. v. Transamerica Corp., 303 F.Supp. 1354 (S.D.N.Y.1969) holding that the margin regulations of the Act do not apply to foreign banks.[5]

There does not seem to be a meaningful distinction between the Investment Advisers Act of 1940 and the Securities Exchange Act on the question of extraterritorial applicability. *Cf.* S.E.C. v. Myers, 285 F.Supp. 743 (D.Md.1968). However, since the 1940 Act is not applicable to the transactions here in question—see discussion *infra*—this Court need not consider the reach of the 1940 Act.

## III.

(a) Plaintiff as beneficiary of a trust has standing, as defendant admits,[6] to assert a 10b–5 claim against a trustee, at least where the actions challenged are not arms-length transactions by the trustee. Heyman v. Heyman, 356 F. Supp. 958 (S.D.N.Y.1973); *accord,* James v. Gerber Products Co., 483 F.2d 944 (6th Cir. 1973); Local 734 Trust v. Continental Illinois National Bank and Trust Co., CCH Fed.Sec.L.Rep. [¶ 94,565, 1974–74 Transfer Binder] (N.D.Ill. May 10, 1974); *compare* Schoenbaum v. Firstbrook, 405 F.2d 200 at 212 (2d Cir. 1968), cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).

 While not contesting plaintiff's standing, defendant argues that plaintiff's allegations of fraud under 10b–5 are not stated with the specificity required by Rule 9(b), Fed.R.Civ.P. The purpose of Rule 9(b) is both to minimize the number of "strike suits" brought in the federal courts and to protect defendants from the detrimental effects to their reputations that may result from fraud charges that cannot be supported by fact. Segal v. Gordon, 467 F.2d 602 at 607 (2d Cir. 1972). While the factual allegations as to fraud in the complaint are not extensive, plaintiff has submitted evidence by affidavit from which this Court cannot at this stage view this as a "strike suit" nor one founded upon conclusory allegations of fraud unsupportable by facts. It therefore appears that the complaint satisfies the requirements of Fed.R.Civ.P. 9(b).

(b) Plaintiff alleges the existence in his favor of a claim for violation by defendant Bank of § 7 of the 1934 Act in the financing by it of the trust's trading in securities. Section 7 is a penal section, but the Courts have permitted civil actions based upon it. *See, e. g.,* Pearlstein v. Scudder & German, 429 F.2d 1136 (2d Cir. 1970), cert. denied, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971).

It has been held that the civil remedy is available only to the "customer" of the party in violation. Meisel v. North Jersey Trust Co., 218 F.Supp. 274 (S.D. N.Y.1963). Here the trust is the customer, though Selzer has allegedly been injured by a violation. Selzer is one step removed from the class of persons whom Congress sought to protect in passing § 7. Where, as here, plaintiff has other bases for relief under the Act to redress his grievances against the alleged offender, it appears unnecessary to consider the expansion of the seemingly intended scope of the congressional protection to include a claim under § 7 for a beneficiary of a "customer" for the losses caused.

(c) Plaintiff has also attempted to state claims against the defendant Bank

---

5. In that case, foreign banks were alleged to have violated § 7 of the 1934 Act and the margin rules in loans to a corporation by which the corporation would finance a tender offer. The banks were held exempted from the Act by § 30(b). Here, the alleged violation of § 7 is more similar to that normally attributable to broker-dealers. Defendant is said to have provided illegal financing in transactions in which it itself traded in American securities for the trust's account. As discussed in the text, defendant's alleged trading in the instant case is the "substantial act" within the United States that makes § 30(b) inapposite.

6. *Defendant's Reply to Plaintiff's Supplemental Memorandum,* at 11.

under the Investment Advisers Act of 1940. A trustee has been held by the Securities Exchange Commission not to be an investment adviser within the meaning of the Act. In re Loring, 11 S.E.C. 885 (1942). However, plaintiff points to a recent S.E.C. staff opinion, Brewer-Burner & Associates, Inc., CCH Fed.Sec.L.Rep. [¶ 79,719, 1973–74 Transfer Binder], in which the Division of Investment Management opined that the Panamanian trustee of Panamanian trusts to be set up by American investors to invest in Mexican government and other securities would be an investment adviser within the meaning of § 202(a)(11) of the 1940 Act. Since the situation and duties of the proposed trustee there cannot be distinguished in a meaningful way from those of the defendant Bank in the instant case, the Court must consider whether the opinion of an S.E.C. staff division which conflicts with a much earlier opinion by the Commission itself should be given persuasive weight on this point.

■ A trustee is historically the legal owner of the trust corpus, while the beneficiary is the equitable owner. The trustee does not advise the trust corpus, which then takes action pursuant to his advice; rather the trustee acts himself as principal. While there may be public policy reasons for holding a trustee who deals in securities for its trust to the standards of the Investment Advisers Act, neither the common sense meaning of the word "adviser" nor a comparison with other situations to which the 1940 Act has been held applicable militates in favor of doing so. The Court therefore finds that the Investment Advisers Act is not available in a suit against a trustee in these circumstances.

(d) Defendant argues that New York's statute of limitations bars judgment for the plaintiff under § 29 of the Securities Exchange Act.[7] While N.Y. C.P.L.R. § 214(2) arguably applies to plaintiff's § 29 claim here, there appears

to be a question of fact as to whether defendant Bank was subject to personal jurisdiction within this state during the period involved. If it was not, the limitary period may have been tolled. *See* Lewis v. Borg-Warner Corp., 37 A.D.2d 609, 325 N.Y.S.2d 314 (2d Dept. 1971). This Court will therefore not rule on this question on this motion to dismiss.

### IV.

In accordance with this opinion, defendant's motions are granted only to the following extent: plaintiff's claims under § 7 of the Securities Exchange Act and under all sections of the Investment Advisers Act are dismissed; and except as so granted the defendant's motions are denied.

Plaintiff's motion for leave to amend his complaint a second time is granted. Plaintiff has indicated a willingness to join as plaintiff the other members of his family who are beneficiaries of the trust, and, as that course seems advisable, he will be granted leave to do so.

So ordered.

---

7. Defendant's argument as to the bar of the statute of limitations as to the § 7 claims is mooted by this Court's disposition of those claims.